IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SMART METER TECHNOLOGIES, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 16-208-SLR |
| | ) |
| DUKE ENERGY CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 11th day of July, 2017, having reviewed the papers submitted in connection with defendant's motion to dismiss (D.I. 7), the court issues its decision as follows:

1. **Background.** Smart Meter Technologies, Inc. ("plaintiff") is the owner of U.S. Patent No. 7,058,524 ("the '524 patent"). (D.I. 1 at ¶ 8) The '524 patent relates to an electrical power metering system. (D.I. 1 at ¶ 7) Duke Energy Corporation ("defendant") is a "power holding company in the United States, supplying and delivering energy to approximately 7.4 million U.S. customers." (D.I. 1 at ¶ 2 (quotation omitted)) Plaintiff contends that defendant infringes claim 17 of the '524 patent. (D.I. 1 at ¶¶ 11-12) Defendant moved to dismiss for failure to state a claim for relief under Federal Rules of Civil Procedure 12(b)(6). (D.I. 7) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. **Standard of Review.** A motion filed under Rule 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in

order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a three-part analysis when reviewing a Rule 12(b)(6) motion. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d. Cir. 2016). In the first step, the court "must tak[e] note of the elements a plaintiff must plead to state a claim." Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Lastly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (citations omitted).

3. Under *Twombly* and *Iqbal*, the complaint must sufficiently show that the pleader has a plausible claim. *McDermott v. Clondalkin Grp.*, 2016 WL 2893844, at *3 (3d Cir. May 18, 2016). Although "an exposition of [the] legal argument" is unnecessary, *Skinner v. Switzer*, 562 U.S. 521 (2011), a complaint should provide reasonable notice under the circumstances. *Id.* at 530. A filed pleading must be "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," such that "the factual contents have evidentiary support, or if so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F. App'x 169, 174 (3d Cir. 2014) (quoting Fed. R. Civ. P. 11(b)). So long as plaintiffs do not use "boilerplate and conclusory allegations" and "accompany their legal theory with factual allegations that make their theoretically viable claim plausible," the Third Circuit has held "pleading upon information and belief [to be] permissible where it can be shown that the requisite factual information is peculiarly

2

within the defendant's knowledge or control." *McDermott*, 2016 WL 2893844, at *4 (quotation marks, citation, and emphasis omitted).

4. As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

5. **§ 101.** Defendant argues that dismissal is appropriate, because "claim 17 is ineligible for patent protection under 35 U.S.C. § 101." (D.I. 8 at 2) The Patent Act extends patent protection to "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . subject to the conditions and requirements of this title." 35 U.S.C. § 101. Despite the protections of § 101, the Supreme Court has held that, "[e]xcluded from such protection are laws of nature, natural phenomena, and abstract ideas." *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, _ U.S. _, 132 S.Ct. 1289, 1293 (2012). In *Alice*, the Supreme Court endorsed a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, _ U.S. _, 134 S.Ct. 2347, 2355 (2014). First, the court must determine if the claims at issue are directed to a patent-ineligible concept.

3

*Id.* If the answer is no, that ends the matter and the defendant's motion is denied. *See, e.g., Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (finding in step one that the claims were not directed to an abstract idea and, therefore, not addressing step two). If, however, the answer is yes, then the court must "determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 134 S.Ct. at 2355.

6. **Alice, Step One.** "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Enfish*, 822 F.3d at 1335 (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed.Cir.2015)). While the Supreme Court "has not established a definitive rule to determine what constitutes an 'abstract idea' . . . . [, it is] sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id.* at 1334.

7. **The claim.** Claim 17 of the '524 patent recites:

> A method of measuring power consumption information on a power line comprising:
> 
> measuring current fluctuations in the power line;
> 
> calculating power consumption information from the current fluctuations in a processor;
> 
> converting the power consumption information into IP-based power consumption information in the processor; and
> 
> transmitting the IP-based power consumption information from the processor to a destination autonomously in IP format over an external power line network.

('524 patent, 10:48-58)

8. **Disputed statement of facts.** Defendant argues that claim 17 "is directed to the [] abstract idea of measuring and transmitting power consumption information that has been performed for years by human meter readers." (D.I. 8 at 2) Defendant

contends that "[c]laim 17 merely claims a faster, more efficient way of performing the abstract idea in an Internet-based world using generic computer and power utility equipment, i.e., a power meter, processor, transceiver, and external power line, for nothing more than their routine functions, i.e., measuring, calculating, converting, and transmitting."[1] (*Id.*) In its accompanying "statement of facts," defendant avers that "[t]he specification acknowledges that **the claimed invention replaces meter reading personnel** with transmission of data over the Internet to achieve a more efficient method of measuring and transmitting power consumption information for billing purposes." (D.I. 8 at 3 (emphasis added)(citing '524 patent, 6:45-51)) The cited text of the specification states:

> Importantly, the power metering systems 10, 110 also allow for the transmission of data, including power consumption data, across the Internet. Thus, power consumption information **could** be transmitted directly to a power utility by power metering systems 10, 110 for immediate processing and billing, thereby obviating the need for meter reading personnel.

('524 patent, 6:45-51 (emphasis added)) The conditional and non-limiting nature of this language does not support defendant's assertion that "the claimed invention replaces meter reading personnel." Meanwhile, the specification identifies a number of other benefits associated with "power metering systems."[2] The specification states that "appliances within the households connected to the power lines 50, 150 can be selectively activated and de-activated by power metering systems 10, 110 to maximize

---

[1] The specification makes no claims as to being "faster" or "more efficient." While the specification identifies some technologies as "known," it does not discuss "routine functions." For the purposes of this motion, absent citation to the record, the court credits statements about the nature of "the invention" as attorney argument.

[2] Plaintiff cites to the '524 patent, 2:45-56, which outlines the embodiments discussed herein with respect to the specification at 6:45-7:9. (D.I. 9 at 2)

5

efficiency."[3] ('524 patent, 6:51-54) "Moreover, the power metering systems 10, 110 allow for the transmission of non-appliance-related data (e.g., standard IP network traffic) across the power lines 50, 150 and/or networks A-D." ('524 patent, 6:58-61) The specification explains that:

> IP-based traffic could be selectively transmitted between networks A and B of power line 50 in a first household by power metering system 10. Similarly, traffic could be selectively transmitted between networks C and D of power line 150 in a second household by power metering system 110. A power line network connection 170 could be provided between the two households for allowing the transmission of IP data therebetween, using a standard power line network protocol (e.g., the HomePlug protocol) between the power lines 50, 150. In such an arrangement, both of the power metering systems 10, 110 could be configured to provide firewall services, so that only desired traffic external to each of the households is allowed. Further, both IP-based traffic, including IP-encapsulated power consumption data, can be shared between the power metering systems 10, 110 using network 70.

('524 patent, 6:61-7:9) Based upon this language, the court cannot conclude, as defendant contends, that it is a simple factual matter that "the '524 patent is directed to the long-standing business practice of power companies—to measure and transmit power consumption data using generic computer equipment and power meters to perform conventional, routine steps."[4] (D.I. 8 at 3)

9. As a second allegedly factual matter, defendant contends that "the '524 patent measures and transmits power consumption information using admittedly conventional technologies." (D.I. 8 at 3) Defendant argues that "the specification makes clear, the inventor did not invent or improve the function of a power line meter, a transceiver, a

---

[3] The court notes that the "efficiency" discussed here is energy efficiency and not defendant's asserted "more efficient method."

[4] According to Local Rule 7.1.3(c)(1)(E), the "concise statement of facts" shall contain "supporting references to the record, presenting the background of the questions at issue." The cited language is presented without citation to the record and appears to be attorney argument.

6

processor, external power lines, or an external power line network (or any other wired or wireless network)." Defendant discusses how the specification, including figures 1, 5, and 6, identifies known technologies; however, defendant repeatedly adds the word "generic" in its statement of facts. (*See* D.I.8 at 4 (identifying "a generic computer processor" and "a generic transceiver" when such terms are not present in the specification)) Defendant argues further in its statement of facts that the specification lacks a number of elements. (D.I. 8 at 5-6) Plaintiff contends that this is "blatant attorney argument" and notes that the specification, with reference to figure 3, identifies a preferred embodiment including the ADE7756 integrated circuit and VS6801 semiconductor chip, which it argues is "clearly more than 'generic' computer equipment." (D.I. 9 at 3)

10. The specification explains that, in an embodiment, the invention may be used to replace human meter readers and that the invention may be used to transmit "[p]ower consumption information . . . to a wireless monitoring station, one or more computers within the household, or directly to a utility company via the Internet." ('524 patent, 1:64-67). As discussed above, the specification identifies other uses, such as transmitting other types of data and operating as a firewall. However, the specification makes no representations about the operation and business practices of electric power utilities. As for the commercially-available components identified in a preferred embodiment, without a more detailed record (including expert reports), the court is unprepared to draw inferences. Moreover, the court notes that claim 17 is a method claim, and "a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made. The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a

claim falls within the § 101 categories of possibly patentable subject matter." *Diehr*, 450 U.S. at 188–89.

11. **Analysis.** In its brief, defendant makes four arguments that claim 17 is "directed to" an abstract idea: (1) the steps of claim 17 "do not involve any scientific or technical innovation, but merely recite a way of measuring and transmitting power consumption information;" (2) "[p]ower utility companies have measured power consumption information for decades using human meter readers;" (3) "the specification expressly acknowledges that the claimed invention could be performed by a meter-reading human" which is "an indication that the claimed invention is directed to an abstract idea;" and (4) "[c]laim 17 is analogous to the claims that the Federal Circuit recently found abstract in *TLI* that were directed to the idea of classifying and storing digital images in organized manner." (D.I. 8 at 8-12) The first three arguments duplicate the arguments found in defendant's "statement of facts."

12. As discussed above, the specification identifies a number of embodiments and a number of possible benefits of the invention. One of these benefits is the possibility of replacing human meter readers. Defendant asserts that this embodiment and possible benefit means that humans can perform "the invention." (D.I. 8 at 12) Plaintiff responds that:

> [T]he specification explicitly claims numerous uses for the claimed invention, such as for the remote control of household appliances in response to power consumption trends, and providing network connectivity and firewall capabilities between an existing network within a dwelling and a power line network, and allowing "power consumption data to be remotely monitored."

(D.I. 9 at 2 (citing '524 patent, 2:45-56)) The specification does not admit that humans could perform any of these functions, and defendant does not identify where the record demonstrates that humans could perform these aspects of the invention. The method of claim 17 most likely could encompass these embodiments, meaning that remote

8

meter reading is only one possible infringing use of claim 17. By definition, a claim is not "directed to" a specific embodiment when multiple embodiments are potentially covered by the claim limitations. Assuming, arguendo, the meter-reading embodiment is an abstract idea and reading claim 17 as a whole in light of the specification (which discloses other embodiments), the court cannot conclude that claim 17 is directed to an abstract idea.

13. **Analogous claims.** Defendant argues that claim 17 is analogous to the claims held invalid by the Federal Circuit in *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016). In that case, the Federal Circuit held that "the invention teaches manually or automatically assigning 'classification data,' such as a date or timestamp, to digital images and sending those images to a server. The server then extracts the classification data and stores the digital images, 'taking into consideration the classification information.'" *TLI*, 823 F.3d at 610. Claim 17 of the '524 patent does not relate to classification of data, digital images, or storing images on a server. The specification in *TLI* made numerous statements about the prior art that enabled the Court to draw its conclusion. In the case at bar, defendant has not adequately explained how applicant's statements about the prior art and the specification of the '524 patent relate to the relevant claims discussed in *TLI*. Defendant has also provided the court with subsequent authority in the form of *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), which defendant contends the "subject matter and concepts . . . are similar to those" in the case at bar. (D.I. 13 at 1) That case arose out of summary judgment on a record and patent wholly unrelated to the '524 patent. *Elec. Power Grp.* 830 F.3d 1352. The court declines to draw analogies on this basis.

14. Moreover, the specification at bar identifies several technical challenges related to conventional power meters in 2002, namely that: (1) "a single . . . meter . . .

9

does not accurately reflect power consumption by individual families or occupants of the dwelling" ('524 patent, 1:24-28); (2) "meters do not . . . identify locations in the building where power is most frequently consumed and/or wasted" (*id.*, 1:32-34); (3) RF meter-reading technologies "do not allow for the direct connection of the meter to the Internet" (*id.*, 1:40-41); and (4) metering systems do not "allow[] for the transmission of power consumption data, in addition to standard network data, over one or more power lines within a dwelling." (*Id.*, 1:43-46) As part of the solution to these technical problems, the specification describes a number of potential architectures:

> In a preferred embodiment of the present invention, the power metering system 10 measures power consumption information on power line 50, before the circuit breaker 55. However, it is to be expressly understood that the power metering system 10 could be placed at any desired location along a power line within a single-family dwelling, multi-family dwelling, commercial business, or elsewhere, to measure power consumption data. For example, the power metering system 10 could be installed on one of the cables 60 to analyze power consumption trends on a given electrical branch stemming from circuit breaker 55. Further, measurement of power consumption in multi-family dwellings can be achieved by positioning a plurality of power metering systems 10 of the present invention at various locations throughout the dwelling (e.g., by placing a single power metering system on each electrical branch that provides electricity for each family within the dwelling).

('524 patent, 2:66-3:16) These architectures contemplate metering devices that appear in places other than the known location of a "conventional power utility meter" (i.e., between the power source and a user's circuit breaker). (*Id.*, 1:20-34) Even if, as defendant contends, human reading of a conventional power meter is a known business process, the specification discusses an altogether different device and proposes numerous other architectures that enable the metering device to do metering tasks that traditional power meters cannot do (e.g., monitoring specific appliances, providing sub-unit level power metering, etc.) and to perform additional non-metering functions (e.g., networking functions such as bridging, combining data traffic with metering data, or serving as a firewall). Plaintiff argues that "[o]nly through claim construction will the

10

court be able to determine the **scope** of the inventive concepts." (D.I. 9 at 2 (emphasis in original))  While this is likely true, at this stage in the proceedings, the specification provides sufficient detail for the court to conclude that claim 17 addresses a technical solution to the technical problem of connecting metering devices over power line networks.  Based upon the intrinsic record, the court concludes that claim 17 is not directed to an abstract idea and, therefore, claim 17 is eligible subject matter under § 101.

      THEREFORE, IT IS ORDERED that defendant's motion to dismiss (D.I. 7) is denied.

                                                                    _____
                                                      Senior United States District Judge